IN THE COURT OF CRIMINAL APPEALS
OF TEXAS



NO. WR-62,023-02




JOSE LUIS VILLEGAS, Appellant

v.

THE STATE OF TEXAS



ON APPLICATION FOR A WRIT OF HABEAS CORPUS
AND MOTION TO STAY THE EXECUTION
FROM CAUSE NO. 01-CR-0196-G
IN THE 319TH JUDICIAL DISTRICT COURT
NUECES COUNTY




                      Keller, P.J., filed a concurring opinion, in which Keasler, Hervey and
Cochran, JJ., joined.
             In 2002, Villegas killed three people. His primary defense, which the jury rejected, was that
he had a mental illness called “intermittent explosive disorder” – in other words, uncontrollable rage. 
Now, for the first time, eight days before his scheduled execution, he alleges in a subsequent habeas
application that he is mentally retarded. I agree that we should dismiss this transparent last-ditch
attempt to delay Villegas’s execution because he has failed to meet an exception to the bar against
considering a subsequent application.
            Neither at trial nor in proceedings related to his initial habeas application has there ever been
any suggestion that Villegas is mentally retarded. Atkins v. Virginia


 had already been decided when
the initial application was filed, so he cannot meet the “new facts” exception found in §5(a)(1).


 He
contends instead that he meets the “innocence of the death penalty” exception of §5(a)(3) under this
Court’s jurisprudence in Ex parte Blue.


 
            The Legislature has determined that the State’s interest in finality justifies the imposition of
a higher burden upon a subsequent applicant who, like Villegas, did not avail himself of the
opportunity to raise a claim of mental retardation in an initial writ.


 An applicant who raises a claim
under Blue must make “a threshold showing of evidence that would be at least sufficient to support
an ultimate conclusion, by clear and convincing evidence, that no rational factfinder would fail to
find mental retardation.”


 
            Villegas has not made such a showing. In concluding in Blue that the applicant had failed
to meet this rigorous standard, we considered not only Blue’s pleadings, but evidence that was
introduced at trial, specifically, an IQ test that showed a full scale IQ of between 75 and 80.


 In the
case before us, Villegas has presented a significant amount of evidence in support of his mental
retardation claim, including affidavits from family members. Some of the same family members
testified at trial and, consistent with Blue, their testimony may be considered at least to the extent
that it rebuts affidavits submitted with the current application.


 
            None of Villegas’s witnesses at trial even hinted that he was mentally retarded. On the one
hand, his mother-in-law, Arecelia Casarez, testified on direct examination, that “Joey is very smart,”
and that he obtained his GED “with a very high qualification.” Her grandson reminded her of
Villegas (his father) because the grandson “is an A/B honor role student. He’s a very smart,
intelligent, little boy.” On cross-examination, she agreed that Villegas “took his GED and passed
it like the first time.” Her affidavit, on the other hand, clearly tries to establish that Villegas is
mentally retarded. In the affidavit, she says “his speech was always slow” and “he had to think about
what he was saying, and he sometimes did not make sense.” He “had food on his face and clothes
all the time” and he relied on his wife to help him get dressed for work and get to work. This last
allegation is contrary to Ms. Casarez’s trial testimony about Villegas’s job performance. At trial,
when questioned as to whether he “had a lot of other good jobs where he [had] been pretty stable and
working at a job for...five years, ten years” she answered “Yes.”
            Villegas’s own exhibits, attached to his current application, reveal that he is not as
intellectually limited as he claims. For instance, in seventh grade English, he earned a grade of 77. 
Achievement test scores from 1988 show him in the 84th percentile in language and the 59th
percentile in math. While it is true that some of his grades and achievement test scores are low, the
higher scores are inconsistent with an IQ of 59.  
            Regarding frontal lobe functioning, Villegas’s own expert witness at trial testified that,
according to the Wisconsin Card Sorting Test, Villegas had “some mild deficits” but on that test “he
was all within average range,” showing no neurological deficit. This was not an IQ test, but it
appears to be contrary to the allegation he now makes. The expert also testified that Villegas is not
brain damaged.
            A person with “a master’s in social work” was hired as part of the defense team at trial. She
interviewed members of Villegas’s family. As far as the record shows, this person never heard any
suggestion that Villegas was mentally retarded.
            I think that we are not required to ignore the facts of the offense in determining whether an
applicant has met the high burden imposed under Blue. In this case, before the murders, Villegas
had been using crack cocaine with his ex-girlfriend. Her mother came home and told him to get out. 
He had already armed himself with a knife, and he stabbed the mother multiple times. Concerned
about his ex-girlfriend’s possible reaction to this, he retrieved another knife and stabbed her to death. 
Villegas also killed her three-year-old son, stabbing him nineteen times. Villegas then changed out
of his clothes, took a television and his ex-girlfriend’s car, pawned the t.v. to get money for drugs,
and, after a high-speed chase, was caught by the police and confessed.
            To obtain a remand under Blue, Villegas must establish to the requisite degree of certainty
that not a single rational juror would believe anything other than that he is mentally retarded. I agree
with the Court that Villegas has failed to meet his burden. 
Filed: April 14, 2014
Do not publish